**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SARAH TACKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-00494-GKF-CDL |
| | ) | |
| SHERIFF OF NOWATA COUNTY, in | ) | |
| their official capacity, and | ) | |
| CODY LOWEN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the court on the Motion of defendant Sheriff of Nowata County, in their[1] official capacity, to Dismiss Plaintiff's Amended Complaint [Doc. 28].   For the reasons set forth below, the motion is granted.

### Background/Procedural History

In her Amended Complaint, plaintiff Sarah Tackett asserts a § 1983 claim against former Nowata County Detention Officer Cody Lowen, in his individual capacity, and a § 1983 claim for *Monell*/municipal liability against defendant Sheriff of Nowata County, in their official capacity. Specifically, Ms. Tackett alleges that defendants violated her Eighth and Fourteenth Amendment rights.   [Doc. 24].

### Federal Rule of Civil Procedure 12(b)(6) Legal Standard

The Sheriff moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   "To survive a motion to dismiss under

---

[1] Though Ms. Tackett brings suit against the Sheriff (in the singular), she also uses the plural phrase "in *their* official capacity," apparently because the Amended Complaint makes specific references to two former Sheriffs, as well as a general reference to the Sheriff in office at the time of the sexual abuse of Ms. Tackett.

Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'"  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient."  *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555).  The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678.  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).  The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

### Allegations of the Amended Complaint

The Amended Complaint includes the following relevant factual allegations:

On or about April 28, 2019, Ms. Tackett was arrested and brought to the Nowata County Jail as a pretrial detainee.  [Doc. 24, p. 2, ¶ 8].  Lowen and another jailer completed the booking process, and left Ms. Tackett alone in a holding cell.  [*Id.* ¶ 9].  Ms. Tackett alleges that, "[s]ometime later in the evening, Defendant Lowen visited [her] cell."  [*Id.* ¶ 10].  Ms. Tackett

asserts that, contrary to the Oklahoma Jail Standards but consistent with the Jail's established practice, there was only one jailer supervising female inmates on the night shift.  [*Id.* at p. 3, ¶¶ 11-12].  Thus, "[n]o other jailers or inmates were present" when Lowen entered Ms. Tackett's cell.  [*Id.* at p. 2, ¶ 10].

Ms. Tackett asserts that Lowen "groomed [Ms. Tackett] and then coerced her into performing oral sex on him."  [*Id.* at p. 3, ¶ 13].  Ms. Tackett asserts that she performed oral sex on Lowen "in dread that he would retaliate against her if she did not" and "out of fear of what might befall her if she refused Officer Lowen's advances."  [*Id.*].

Ms. Tackett further alleges that the Nowata County Sheriff's Office's (NCSO's) "persistent failure to supervise, failure to train and understaffing at the Jail . . . was a moving force behind the Constitutional deprivations at issue here." [*Id.* at p. 4, ¶ 22].  Specifically, with respect to NCSO's policies, Ms. Tackett alleges that, "[t]o the extent that Nowata County had any written policies regarding inappropriate contact with inmates, including sexual contact, those policies were not followed nor enforced, in deliberate indifference to inmate health and safety," as the NCSO's "'management style' was 'hands-off' at best, and describing the culture at the Jail as 'undisciplined' and 'anything goes' would be charitable.  There was an utter absence of supervision and accountability at the Jail, and an acquiescence and acceptance of lawless behavior."  [*Id.* at pp. 4-5, ¶¶ 24-25].

Ms. Tackett further asserts that, one month before the alleged assault, almost the entirety of the NCSO staff resigned, including the then-Sheriff, five deputies, the county undersheriff, the head dispatcher and the canine ranger.  In announcing her resignation, the former Sheriff stated, "[t]he condition of the [Nowata County Jail] is such that it does not comply with constitutional standards."  [*Id.* at p. 5, ¶ 26].  Several weeks prior to the alleged assault, almost a dozen unpaid

volunteers were helping to staff the Jail and perform administrative functions.   [*Id.* ¶ 27].

Ms. Tackett alleges that the Jail's deficiencies "were in plain view of NCSO staff/personnel for years prior to [her] detention there."   [*Id.* ¶ 28].   Specifically, Ms. Tackett alleges as follows:

- In December 2016, state inspectors found the Jail did not have proper policies and procedures in place for staff training and orientation.   [*Id.* ¶ 29].

- In March 2017, inspectors cited the Sheriff for having inadequate medical care in the Jail for inmates.   [*Id.* ¶ 30].

- In April 2018, the Jail/NCSO were cited for failures to inform State Health Department staff of inmate medical issues, one of which being a suicide attempt in February of that same year.   [*Id.* at p. 6, ¶ 31].   Among other issues, carbon monoxide levels were discovered to be at dangerous levels just weeks prior to the former Sheriff's resignation, and State Fire Marshals cited the Jail for not having a fire alarm system in place, for leaving wires exposed in shower areas, and for critical staffing issues.   [*Id.* ¶ 32].

- For many months, and even years prior to April 28, 2019, staffing at the Jail was at a crisis level.   NCSO could not provide constitutional conditions at the Jail because staffing was such that the adequate supervision and protection of inmates, including protection from sexual assault, could not be ensured.   [*Id.* ¶ 33].

Ms. Tackett further alleges that "NCSO's deliberate indifference to the safety and welfare of Ms. Tackett, and inmates like Ms. Tackett, is evinced by its persistent violation of numerous provisions of the Oklahoma Jail Standards," including those requiring that, where both male and female prisoners are housed in a facility, at least one male and one female trained jailer be available to perform sensitive functions, and there be sufficient staff to perform all assigned functions relating to security, custody, and supervision of prisoners.   [*Id.* ¶ 35].   Additionally, Ms. Tackett alleges that NCSO failed to train its staff with respect to "appropriate contacts with female inmates."   [*Id.* at p. 7, ¶ 36].

Specific to Lowen, Ms. Tackett alleges that NCSO knew, or should have known, that Lowen posed a substantial risk of sexual misconduct, but failed to take any actions to alleviate that risk, [*Id.* ¶¶ 37-38], specifically—

- According to dispatcher Alyssa Buss, Lowen would constantly talk about his personal life at work, including his sex life, and lament that he was not having sex at home. Additionally, Lowen would often lick his finger and stick it in Ms. Buss's ear while also making inappropriate sexual comments. [*Id.* ¶¶ 39-40].

- Prior to April 28, 2019, Lowen approached NCSO dispatcher Melissa Morris and made several sexually inappropriate comments, including that they should "f**k around," and, upon noticing what appeared to be a hickey on Ms. Morris's lip, he told her, "if me and you were f**king around you wouldn't have that." [*Id.* at pp. 7-8, ¶ 41]. Ms. Morris told Lowen to stop speaking to her like that and she wasn't interested, but he persisted in harassing her. Ms. Morris reported the harassment to dispatcher supervisor, Helen "DeDe" Kerns, who then reported the behavior to former NCSO Sheriff Sandy Hadley. [*Id.* at p. 8, ¶ 42].

- Lowen made numerous "sexually charged" comments to NCSO jailer Robert Parks, who started working for NCSO on or around April 24, 2019. Ms. Tackett alleges that Lowen was, in part, responsible for giving Parks on-the-job training, during which Lowen allegedly described to Parks "how to obtain sexual favors from female inmates without getting caught." [*Id.* ¶¶ 44-46].

Based on the foregoing, Ms. Tackett alleges that NCSO's "failure to investigate Lowen's repeated acts of sexual harassment, failure [to] discipline him, and failure to provide additional staffing, supervision, and training, constitutes deliberate indifference." [*Id.* ¶ 47].

## Analysis

"In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege '(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.'" *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005) (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)). As set forth above, Ms. Tackett alleges that Lowen, acting under the conduct of state law, coerced her into performing oral sex on him while she was a pretrial detainee. The Tenth Circuit has recognized that sexual abuse constitutes excessive force

under the Eighth Amendment.[2]  *See Smith v. Cochran*, 339 F.3d 1205, 1212-13 (10th Cir. 2003) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."). Thus, Ms. Tackett has plausibly alleged a constitutional violation by Lowen.

However, a county, though a "person" for purposes of § 1983, "may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).[3]  Rather, counties may be liable only under a theory of municipal liability as set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  "*Monell* allows plaintiffs to sue local governing bodies (or their functional equivalents) directly under § 1983 for constitutional violations pursuant to a body's policy, practice, or custom." *Estate of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1189 (10th Cir. 2022).  To plausibly allege a *Monell* claim against NCSO, Ms. Tackett "must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Estate of Burgaz ex rel. Zommer*, 30 F.4th at 1189.

The Tenth Circuit has recognized that

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the

---

[2] Pretrial detainees, like Ms. Tackett, "have access to" an Eighth Amendment claim under the Fourteenth Amendment.  *See Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

[3] As previously stated, Ms. Tackett sues the "Sheriff of Nowata County, in their official capacity." "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also Burke v. Glanz*, 292 F. Supp. 3d 1236, 1249 (N.D. Okla. 2017) ("A suit against an official in his or her official capacity is the same as asserting a claim against the municipality or county the official represents and is considered under the standards applicable to 42 U.S.C. § 1983 claims against municipalities or counties.").  Thus, the court treats Ms. Tackett's claims as being asserted against the Nowata County Sheriff's Office.

ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; and (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Ms. Tackett does not allege the existence of a formal regulation or policy statement. Rather, she asserts that NCSO maintained an "anything goes" culture and chronic understaffing that amounted to an informal custom and widespread practice. Further, Ms. Tackett relies on failure to train and failure to supervise theories.[4] The court separately considers each alleged policy or custom.

### A.    *Informal Custom/Widespread Practice*

Ms. Tackett first alleges that NCSO's "'management style' was 'hands-off' at best, and describing the culture at the Jail as 'undisciplined' and 'anything goes' would be charitable." Ms. Tackett further asserts that "[t]here was an utter absence of supervision and accountability at the Jail, and an acquiescence and acceptance of lawless behavior, amounting to reckless indifference to the safety and well-being of the inmates." [Doc. 24, p. 5, ¶ 25].

Within respect to an "anything goes" informal policy, Ms. Tackett relies on the Tenth Circuit's decision in *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008), wherein the Circuit concluded that a jury could reasonably infer that a sheriff acted with deliberate indifference to the potential that jail staff would sexually assault inmates based, in part, on evidence that the sheriff failed to enforce a "no-contact" policy and that he permitted an undisciplined, "anything goes"

---

[4] "For a municipality (or sheriff, in this case) to be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation." *Estate of Burgaz ex rel. Zommer*, 30 F.4th at 1189. As previously stated, Ms. Tackett plausibly alleges that Lowen, a then-NCSO employee, committed a constitutional violation.

culture amongst detention officers. *See Tafoya,* 516 F.3d at 918-19. However, *Tafoya* is distinguishable as, in that case, the plaintiff presented evidence of specific incidents demonstrating the "anything goes" culture, including that officers slept during their shifts, were intoxicated at work, and would watch pornographic movies while on duty, all of which went undisciplined by the Sheriff. *Id.* at 919. In contrast, Ms. Tackett includes no *factual* allegations to substantiate her claim that NCSO acquiesced in detention officer's "lawless behavior." In fact, the Amended Complaint's factual allegations are limited to Lowen's behavior. Ms. Tackett includes no allegations of improper conduct by any other detention officer or that the Sheriff ignored or failed to address same. Conclusory allegations of an "anything goes" culture, without factual allegations in support, are insufficient to establish an informal policy. *See Martinez v. Padilla,* No. CIV-19-889-JCH-GJF, 2020 WL 3542289, at *11 (D.N.M. June 30, 2020); *see also Adkins v. City of Colorado Springs,* No. 20-CV-01022-KMT, 2021 WL 810107, at **10-11 (D. Colo. Mar. 3, 2021).

More significantly, in *Tafoya*, the Sheriff was aware of prior incidents of sexual assault at the jail, but "made only minimal efforts to address the glaring safety problems." *Tafoya*, 516 F.3d at 918. This is consistent with the Tenth Circuit's articulation of deliberate indifference, which the Circuit has set forth in the context of *Monell* claims as follows:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction.

*Barney v. Pulsipher,* 143 F.3d 1299, 1307-08 (10th Cir. 1998) (internal citations omitted); *see also*

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("[A]

plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."); *Tafoya,* 516 F.3d at 918-21.

Here, Ms. Tackett includes no allegations of prior instances of sexual abuse of inmates. Insofar as Ms. Tackett points to her allegation that, during Lowen's on-the-job training of NCSO jailer Robert Parks, "Lowen described to Parks how to obtain sexual favors from female inmates without getting caught," [Doc. 24, p. 8, ¶¶ 44-46], Ms. Tackett includes no allegations from which the court may reasonably infer that the Sheriff was aware of Mr. Lowen's alleged statement or sexual encounters involving Lowen and inmates.   Further, Ms. Tackett does not explicitly assert that Lowen made the statement *prior to* the alleged April 28, 2019 constitutional violation. Allegations of misconduct *after* the relevant constitutional violation are insufficient to plausibly allege deliberate indifference.   *Martinez*, 2020 WL 3542289, at *10.   Moreover, Ms. Tackett does not include any factual allegations regarding the identity of other inmates from whom Lowen allegedly coerced sexual favors, when such incidents allegedly occurred, or the circumstances surrounding the incidents.   Thus, Lowen's alleged statement does not plausibly allege a pattern of prior misconduct.

Ms. Tackett also points to allegations of other instances in which Lowen allegedly made sexually inappropriate comments his fellow County employees and, in one instance, stuck his finger in a female employee's ear.   *See* [Doc. 24, pp. 7-8, ¶¶ 39-43].   However, these allegations relate to fellow employees, not inmates, and do not involve coercive sexual conduct.   Thus, the allegations are not relevant to the question before this court—whether NCSO was deliberately indifferent in April of 2019 to the risk that detention officers would *sexually abuse inmates*.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 (10th Cir. 2019).   For the same reasons, Ms. Tackett's allegations that NCSO was cited for inadequate medical care and reporting of medical issues of inmates, as well as factual allegations regarding the physical condition of the jail, including that it had high carbon monoxide levels, no fire alarm in place, and exposed wires in the shower areas, are not relevant to the question before this court.   [Doc. 24, pp. 5-6, ¶¶ 29-32].   Although troublesome, without a connection between these incidents and sexual abuse of inmates, the court cannot reasonably infer that NCSO had notice that is failure to act was substantially certain to result in a constitutional violation and that NCSO consciously disregarded the risk of harm.   *Barney,* 143 F.3d at 1307-08.   Thus, Ms. Tackett fails to plausibly allege a pattern of tortious, "anything goes" conduct or that NCSO was deliberately indifferent to the risk associated with same.

In contrast, the Amended Complaint includes allegations from which the court may reasonably infer that NCSO had an informal policy or widespread practice of understaffing and violating policies related to staffing requirements to accommodate prisoners' genders.   *See* [Doc. 24, pp. 5-6, ¶¶ 26-27, 32-35].   However, Ms. Tackett includes no allegations from which the court may reasonably infer that NCSO was deliberately indifferent to a risk of sexual abuse of inmates as a result.   *See Barney,* 143 F.3d at 1307-08.

Ms. Tackett alleges that NCSO's understaffing and various policy violations "evince[] deliberate indifference the safety and security of inmates generally, and female inmates like Plaintiff, specifically," and that the alleged sexual assault occurred as a result.   [Doc. 24, pp. 6-7, ¶ 35].   However, as previously stated, Ms. Tackett includes no allegations of a pattern of prior incidents of sexual abuse such the County knew or should have known of the risk.   *See Barney,* 143 F.3d at 1307-08.   Further, the Tenth Circuit has declined to conclude that sexual assault is a

plainly obvious consequence of having one male jailer supervising female inmates. *See Barney*, 143 F.3d at 1309 n.8; *Hovater v. Robinson*, 1 F.3d 1063, 1066-68 (10th Cir. 1993).   Thus, Ms. Tackett fails to allege that NCSO acted with deliberate indifference as to the understaffing and policy violations, and Ms. Tackett's § 1983 claim premised on informal policy/widespread practice fails.

       B.       *Failure to Train*

"[F]or claims of inadequate hiring, training, or other supervisory practices, a plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.'"   *Waller*, 932 F.3d at 1284 (quoting *Brown*, 520 U.S. at 407).   "To satisfy the stringent deliberate indifference standard, '[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'"   *Waller,* 932 F.3d at 1285 (quoting *Connick v. Thompson,* 563 U.S. 51, 61 (2011)); *see also Waller,* 932 F.3d at 1284 (internal citation omitted) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct.").   However, "'in a narrow range of circumstances,' 'however rare,' . . . 'the unconstitutional consequences of a failure to train' are [so] 'highly predictable' and 'patently obvious'" that a pattern of violations is unnecessary.   *Waller,* 932 F.3d at 1285 (quoting *Connick,* 563 U.S. at 63-64).

Ms. Tackett alleges that NCSO failed to train its staff with respect to "appropriate contacts with female inmates."   [*Id.* at p. 7, ¶ 36].   However, as previously stated, Ms. Tackett includes no specific allegations of similar, prior incidents involving sexual abuse of female inmates.

Insofar as Ms. Tackett points to her allegation of Lowen's alleged statement to NCSO jailer Parks, the Tenth Circuit has concluded that an allegation of one similar incident does not plausibly allege a pattern of prior misconduct.  *See Waller*, 932 F.3d at 1287.   Further, as previously stated, Ms. Tackett does not explicitly assert that Lowen made the statement *prior to* the alleged April 28, 2019 constitutional violation and "[i]ncidents that occurred subsequent to the incident at issue in this case cannot have provided [NCSO] with notice of a deficiency in its training program before that incident" and therefore cannot support an inference that NCSO acted with deliberate indifference.  *Waller,* 932 F.3d at 1286-87.[5]   Thus, Ms. Tackett fails to plausibly allege a pattern of similar incidents of constitutional violations by untrained employees.  *Waller,* 932 F.3d at 1285.

Nor does this matter fall within the "'narrow range of circumstances,' 'however rare,' in which 'the unconstitutional consequences of a failure to train' are [so] 'highly predictable' and 'patently obvious'" that a pattern of violations is unnecessary.  *Waller,* 932 F.3d at 1285.  As previously stated, Ms. Tackett alleges that NCSO's training was deficient with respect to "appropriate contacts with female inmates."   The Tenth Circuit has recognized that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."  *Barney,* 143 F.3d at 1308; *see also Schneider*, 717 F.3d at 774.   That is, sexual abuse of inmates is not "a plainly obvious consequence of a deficient training program." *Barney,* 143 F.3d at 1308.

Finally, Ms. Tackett includes no further factual allegations regarding NCSO's training, including the identity of the officer who trained Lowen, the specific deficiencies in the training, or

---

[5] Moreover, as previously stated, Ms. Tackett includes no specific factual allegations regarding the identity of other inmates from whom Lowen allegedly coerced sexual favors, when such incidents allegedly occurred, the circumstances surrounding the incidents, or that the Sheriff was aware of those incidents.

how further training would have prevented the alleged constitutional violation.   For this additional reason, Ms. Tackett fails to plausibly allege a failure to train theory.   *See Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1095-96 (D. Colo. 2023); *Taylor v. Armor Correctional Health Servs*., No. 20-CV-01406-WJM-NYW, 2021 WL 4556213, at *15 (D. Colo. July 21, 2021).

Based on the foregoing, Ms. Tackett fails to plausibly allege inadequate training by NCSO or that it was deliberately indifferent with respect to the constitutional violations that may result. Thus, Ms. Tackett fails to plausibly allege a § 1983 *Monell* claim premised on failure to train.

> C.    *Failure to Supervise*

The Tenth Circuit treats failure to supervise the same as failure to train.   *See Whitewater v. Goss,* 192 F. App'x 794, 797 (10th Cir. 2006) (unpublished)[6]; *Bell v. City of Topeka,* 496 F. Supp. 2d 1182, 1194 (D. Kan. 2007); *Phelps v. Holliman*, No. CIV-23-755-F, 2023 WL 7553627, at *3 (W.D. Okla. Nov. 14, 2023); *Graham v. City of Lone Grove*, No. 19-CV-298-JFH, 2022 WL 2070607, at *8 (E.D. Okla. June 8, 2022).   Thus, only where a county's a failure to supervise jail employees "evidences a 'deliberate indifference to the rights of its'" inmates can the failure to supervise "be considered a 'policy or custom that is actionable under § 1983.'"   *Phelps*, 2023 WL 7553627, at *3 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

As previously stated, "deliberate indifference" generally requires that a plaintiff allege a pattern of similar constitutional violations, *Waller,* 932 F.3d at 1285, and Ms. Tackett fails to do so.   Further, the conduct alleged in the Amended Complaint does not fall within "the 'ambiguous 'gray area[]' about which . . . officers, such as [Lowen] would obviously need . . . supervision to know how to handle the situations at issue correctly.'"   *Phelps,* 2023 WL 7553627, at *3 (quoting

---

[6] "Unpublished decisions are not precedential but may be cited for their persuasive value."   10th Cir. R. 32.1(A).

*Waller*, 932 F.3d at 1284).   Thus, Ms. Tackett fails to plausibly allege a § 1983 *Monell* claim premised on failure to supervise.[7]

**Conclusion**

WHEREFORE, the Motion to Dismiss [Doc. 28] of defendant Sheriff of Nowata County, in their official capacity, is granted.

IT IS SO ORDERED this 29th day of April, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[7] The Amended Complaint also refers to NCSO's alleged "failure to investigate" and "failure to discipline" Lowen [Doc. 24, p. 8, ¶ 47].   In the response, Ms. Tackett does not indicate an intent to pursue failure to investigate and failure to discipline as separate theories.  *See generally* [Doc. 30].   Regardless, Ms. Tackett's allegations in this regard are wholly conclusory, as she alleges no specific facts as to why NCSO's investigation/discipline was inadequate.   Further, and more significant to this court, the allegations relate to NCSO's failure to investigate/discipline Lowen for his alleged sexual harassment of fellow County employees, *not Jail inmates*.   Thus, the allegations do not demonstrate deliberate indifference by NCSO of a known risk of a constitutional violation.  *See Waller*, 932 F.3d at 1286.